IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ELAINE SCHERER and<br>NEIL SCHERER,<br><br>Plaintiffs,<br><br>VS.<br><br>ELI LILLY AND COMPANY and,<br>DOES 1 through 50, inclusive<br><br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____<br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs, ELAINE SCHERER and NEIL SCHERER, by and through undersigned counsel, complains of Defendants, ELI LILLY AND COMPANY, and DOES 1 through 50, inclusive, because:

## INTRODUCTION

1. This is a civil action for products liability alleging personal injuries and damages, including serious and life-threatening withdrawal symptoms, suffered by Plaintiff, ELAINE SCHERER, as a direct and proximate result of Plaintiff's ingestion and cessation of the prescription drug, Cymbalta (duloxetine), which is manufactured, marketed, and sold by Defendant Eli Lilly and Company (hereinafter, "Defendant" or "Lilly").

## PARTIES

2. Plaintiffs ELAINE SCHERER and NEIL SCHERER are citizens and residents of the State of Missouri.

3. Defendant ELI LILLY and COMPANY is, and was, an Indiana corporation with its headquarters in Indianapolis, Indiana. Its registered agent is **NATIONAL REGISTERED**

1

**AGENTS, INC. 120 South Central Avenue, Clayton, MO 63105.** Lilly is a pharmaceutical company involved in the research, development, testing, manufacture, production, promotion, distribution, marketing and sale of numerous pharmaceutical products, including Cymbalta, a prescription antidepressant drug.

4.      The true names and identities of those defendants designated as DOES 1 through 50, inclusive is unknown, but each of said fictitiously named defendants was negligently and unlawfully responsible for the events herein described, and for the injuries and damages sustained by Plaintiff, and Plaintiff will ask leave of court to amend this complaint when the identity of each such fictitiously named defendant has been ascertained

5.      At all relevant times, each of the Defendants and their directors and officers acted within the scope of their authority.  During the relevant times, Defendants possessed a unity of interest between themselves.  As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiff for Plaintiff's damages.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Lilly insofar as Lilly is authorized and licensed to conduct business in Indiana, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

7.      Furthermore, Lilly has caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

2

8.      This Court has subject matter jurisdiction in the form of diversity jurisdiction, pursuant to 28 U.S.C.A. § 1332, in that there is a complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

9.      Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

10.      Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion. A substantial portion of Lilly's sales and profits have been derived from its drug Cymbalta, whose 2009 annual sales exceeded $3 billion, making it the second most profitable drug in Lilly's current product line.

11.      Lilly has enjoyed considerable financial success from manufacturing and selling prescription drugs for the treatment of clinical depression, including the popular antidepressant Prozac (generically known as fluoxetine).  Lilly launched Prozac in 1988 touting it as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI"). SSRIs are a class of antidepressant drugs that were promoted as increasing the brain chemical serotonin in the synaptic clefts between the neurons in the brain.  It has been theorized that reduced levels of serotonin cause depression; however, recent studies have undermined this theory.  Prozac became extremely popular in the 1990s and was the top-selling antidepressant of its kind. Prozac's patent expired in August 2001.

12.      In 2001, Lilly needed to fill the void left behind by Prozac's patent expiration, and so it sought approval by the Food and Drug Administration's ("FDA") for its next antidepressant, Cymbalta. Unlike Prozac, Cymbalta is a "Serotonin-Norepinephrine Reuptake Inhibitor" ("SNRI"), which Lilly promoted as increasing the brain chemicals serotonin and norepinephrine in the synaptic clefts between the neurons in the brain.  Lilly and other SNRI

3

manufacturers admit that the precise mechanism of action is not clear, however, they have promoted the drugs by stating that higher levels of these neurotransmitters somehow improve and elevate mood.

13. In 2003, the FDA initially rejected Lilly's application to approve Cymbalta due to certain violations of good manufacturing practices and the risk of liver toxicity apparent in the drug's safety profile.

14. Eventually, in 2004, manufacturing issues were resolved and the FDA approved Cymbalta with a liver toxicity warning included in the prescribing information. The drug was approved for Major Depressive Disorder ("MDD"). In 2007, the FDA approved Cymbalta for treatment of Generalized Anxiety Disorder ("GAD") and in 2008 for treatment of fibromyalgia.

15. Since the FDA's initial approval of Cymbalta in 2004, Lilly has aggressively marketed the drug to the public and the medical community, spending hundreds of millions of dollars each year on advertising and promotion. Lilly has promoted Cymbalta directly to consumers, including Plaintiff, through all major media channels, including internet, print and television. In addition, Lilly has promoted Cymbalta to the medical community by utilizing its well-organized army of sales representatives to personally visit physicians and health care professionals to distribute free drug samples and promotional literature. Lilly further promoted Cymbalta through advertisements in medical journals and presenting talks and exhibits at medical conferences.

16. Lilly's promotional campaigns have continuously overstated the efficacy of Cymbalta and understated, downplayed, and/or failed altogether to state the true withdrawal side effects associated with Cymbalta.

17.     Presently and at all times material herein, the Cymbalta label provided the following precaution regarding discontinuation: "Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis and vertigo...."

18.     In addition to using the euphemistic term "discontinuation" to describe withdrawal side effects, Lilly also made it appear that such discontinuation symptoms were rare and only affected approximately 1% of Cymbalta users.

19.     However, according to a January 2005 article published in the Journal of Affective Disorders, Lilly's Cymbalta clinical trials showed that a significant percentage (44.3%) of Cymbalta patients suffered from "discontinuation" side effects.  David G. Peahia *et al.*, Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder, 89 JOURNAL OF AFFECTIVE DISORDERS 207 (2005).  In this published, peer-reviewed paper, the withdrawal side-effect rates for Cymbalta were nearly double that experienced by placebo users, and these findings were statistically significant. Accordingly, the rate of withdrawal or "discontinuation" for Cymbalta (as established by Lilly's clinical trials) was 44.3%, yet in its packaging label, Lilly misleadingly presented this rate as approximately 1%.

20.     Moreover, Lilly's clinical trials showed that, overall, 9.6% of Cymbalta users suffered *severe* withdrawal side effects, yet nowhere in the label does Lilly inform practitioners

and patients of that risk.

21.     Cymbalta's withdrawal side effects include, among other things, headaches, dizziness, nausea, fatigue, diarrhea, paresthesia, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations, seizures and vertigo. When patients try to stop taking Cymbalta, the side effects can be severe enough to force them to start taking Cymbalta again, not to treat their underlying condition, but simply to stop the withdrawal symptoms. Patients thus become prisoners to Cymbalta, and Lilly financially benefits by having a legion of physically dependent, long-term users of Cymbalta.

22.     Notwithstanding Lilly's knowledge of the high rate of withdrawal symptoms in patients stopping Cymbalta, Lilly failed to adequately, properly, and fully warn patients and physicians about the risk.

23.     Instead, in its product labeling, marketing and advertising, and in information made available to consumers and physicians, Lilly reported a far lower risk, downplayed any difference in the withdrawal risk for Cymbalta as compared to other similar antidepressants, and affirmatively misled the consuming patient population and mischaracterized the drug's risk profile.

24.     In addition to failing to adequately warn about the actual rate and severity of withdrawal side effect risks, Lilly also overplayed the efficacy of Cymbalta.  Seeking to capture a greater segment of the antidepressant market, in 2005, Lilly initiated the direct-to-consumer marketing campaign: "Depression hurts. Cymbalta can help." Cymbalta advertisements bearing this slogan appeared ubiquitously on television, in print and on the internet. Lilly's advertising campaign made it appear that Cymbalta not only treated depression but that it also treated physical pain associated with depression. Scientists reviewing the

Cymbalta data have concluded that Lilly's claims are misleading. For example, in a 2008 article published in Psychotherapy and Psychosomatics, the author concluded that "the marketing of duloxetine as an antidepressant with analgesic properties for people with depression does not appear to be adequately supported."

25.     Lilly has also augmented its misleading advertising campaigns by engaging in selective and biased publication of its clinical trials of Cymbalta. By way of example, Lilly has generally published only favorable studies of its Cymbalta clinical trials and refused to publish any of the negative and unfavorable studies. Such selective publication of clinical trial data gives the impression that the drug is safer and more effective than it actually is. In a recent study published in the New England Journal of Medicine, researchers obtained clinical trials for antidepressants (including Cymbalta) that had been submitted to the FDA and compared them with studies that had been published. The authors found that there was a "bias towards the publication of positive results" and that, "according to the published literature, it appeared that 94% of the trials conducted were positive. By contrast, the FDA analysis shows that 51% were positive." The authors found that, as a result of such selective publication, the published literature conveyed a misleading impression of Cymbalta's efficacy resulting in an apparent effect-size that was 33% larger than the effect size derived from the full clinical trial data. See Erick H. Turner *et al.*, Selective Publication of Antidepressant Trials and Its Influence on Apparent Efficacy, 358 NEW ENG. J. MED. 252 (2008).

26.     Lilly's misleading direct-to-consumer promotional campaigns, its misleading presentation of Cymbalta's efficacy and its failure to adequately warn regarding Cymbalta's withdrawal and dependency side effects have paid off financially for Lilly. Cymbalta has become a "blockbuster" drug with over $3 billion dollars in annual sales. In the past few years,

Cymbalta has been the second most profitable drug in Lilly's product line. Coincidently, the only drug ahead of Cymbalta is Zyprexa, an antipsychotic drug that Lilly promoted illegally. Indeed, in 2009, Lilly agreed to plead guilty and pay $1.415 billion to the federal government for illegally promoting Zyprexa. This resolution included a criminal fine of $515 million, which, at the time, was the largest settlement ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind.

27.     Lilly had the knowledge, the means and the duty to provide adequate warnings regarding Cymbalta's common and severe withdrawal and dependency side effects as well as a duty to honestly portray the safety and efficacy of Cymbalta. Lilly could have relayed these warnings through the same means it utilized to advertise its products, which included but are not limited to its labeling, "Dear Doctor letters," advertisements and sales representatives.

28.     In October 2012, the Institute for Safe Medication Practices (ISMP), a non-profit healthcare consumer safety watchdog, issued findings from its independent investigation of Cymbalta adverse events found in the FDA Adverse Event Reporting System (FAERS). *See* QuarterWatch, *Monitoring FDA MedWatch Reports*, Why Reports of Serious Adverse Drug Events Continue to Grow, Oct. 3, 2012, ISMP.

29.     The report announced that the investigation uncovered "a signal for serious drug withdrawal symptoms associated with duloxetine (CYMBALTA)," and detailed for the public what Lilly has long known: "[W]ithdrawal symptoms were reported in 44-50% of patients abruptly discontinuing duloxetine at the end of clinical studies for depression, and more than half of this total did not resolve within a week or two." *Id*. at 11

30.     The ISMP report continued: "[W]e identified a serious breakdown at both the

FDA and the manufacturer, Eli Lilly and Company, in providing adequate warnings and instructions about how to manage this common adverse effect." *Id*.

31.    Explaining the lack of adequate warnings, the ISMP stated:
Instead of clear warnings and useful instructions, the duloxetine patient Medication Guide says only:

> "Never stop an antidepressant medicine without first talking to a healthcare provider.  Stopping an antidepressant medicine suddenly can cause other symptoms."

This FDA-approved patient guide is materially deficient.  It gives no hint of the persistence or severity of the symptoms known to occur.

….

We could not identify any FDA-approved or company information for patients about how to discontinue duloxetine. *Id*. at 12-13.

32.    In conclusion, the report minced no words in its indictment of Lilly's product information: "A major lapse has occurred in the FDA-approved information for patients about the risks of stopping duloxetine." *Id*. at 15.

33.    Falsely reassured by the misleading and deceptive manner in which Lilly reported Cymbalta's withdrawal risk, physicians, including Plaintiff's physician, have prescribed, and continue to prescribe, Cymbalta to patients without adequate, accurate and proper warnings relating to discontinuation of the drug.

34.    On or around February 12, 2011, Plaintiff's, ELAINE SCHERER's physician prescribed Cymbalta for treatment of Plaintiff's depression.

35.    Around June 10, 2014, Plaintiff stopped taking Cymbalta.

36.    Upon discontinuing Cymbalta, Plaintiff experienced severe and dangerous withdrawal symptoms.  By way of example, Plaintiff experienced anxiety, lethargy, excessive

9

crying, brain zaps, sexual dysfunction (limited sex drive), irritability and skin breakouts.

37.     Plaintiff continues to suffer symptoms of withdrawal.

38.     At all times relevant, Lilly knew or should have known that Cymbalta was in a defective condition and was and is inherently dangerous and unsafe when used in the manner instructed and provided for by Lilly.

39.     At all times relevant, Lilly knew or should have known of the significantly increased risk of withdrawal symptoms, including their severity and duration, posed by Cymbalta and yet failed to adequately warn about said risks.

40.     At all times relevant, Lilly engaged in a willful, wanton, and reckless conduct, including its defective design of Cymbalta, its failure to warn about Cymbalta's risks, and its pattern of affirmative misrepresentations and omissions relating to the safety and efficacy of Cymbalta.   It overstated the drug's efficacy, downplayed withdrawal side effects, and misstated the actual risk and severity of side effects, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff and Plaintiff's physicians.

41.     Plaintiff's use of the drug and consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to Cymbalta.

42.     If Lilly had adequately, accurately and properly warned about the withdrawal risk associated with Cymbalta, including the high risk of experiencing them and their frequency and severity, Plaintiff's physician would not have prescribed the drug to Plaintiff; Plaintiff would have refused the drug; and/or Plaintiff's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

43.     As a direct and proximate result of taking Cymbalta, Plaintiff suffered

10

compensable injuries, including but not limited to the following:

    a.  physical, emotional, and psychological injuries;

    b.  past and future pain and suffering;

    c.  past and future mental anguish;

    d.  loss of enjoyment of life; and

    e.  past and future medical and related expenses.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

44.    Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

45.    Lilly owed to Plaintiff, and to other consumers and patients, a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the drug Cymbalta, including the duty to assure that the product is as effective as it is promoted, that the product carries adequate warnings and that the product does not cause users to suffer from unreasonable, dangerous side effects.

46.    Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

    a.  Failed to provide proper warnings regarding the true frequency and severity of the withdrawal and dependency side effects associated with Cymbalta;

    b.  Failed to provide warnings that Cymbalta could cause patients to become physically dependent on Cymbalta;

    c.  Failed to provide adequate training and instructions to patients and health care professionals regarding appropriate uses and discontinuation of Cymbalta;

11

d. Failed to warn that the risks associated with Cymbalta exceeded the risks of other comparable forms of treatment;

e. Negligently misrepresented the efficacy of Cymbalta by portraying Cymbalta as being more efficacious than it really is;

f. Negligently designed Cymbalta in a way that it knew would cause withdrawal and physical dependency;

g. Negligently marketed Cymbalta despite the fact that the risk of the drug was so high and the benefits of the drug were so questionable that no reasonable pharmaceutical company, exercising due care, would have placed it on the market;

h. Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed, material facts regarding the safety and efficacy of Cymbalta to the Plaintiff, the public, the FDA and the medical community;

i. Failed to comply with its post-manufacturing duty to warn that Cymbalta was being promoted, distributed and prescribed without warning of the true risk of side effects and without accurate information regarding its efficacy; and

j. Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiff's rights and safety.

47.    Despite the fact that Lilly knew, or should have known, that Cymbalta caused unreasonable, dangerous side effects, Lilly continued to market Cymbalta to consumers, including Plaintiff, when there were safer and more effective alternative methods and treatments. Lilly knew, or should have known, that Cymbalta users would suffer foreseeable

12

injuries as a result of its failure to exercise ordinary care, as described above. Lilly knew or should have known that the Cymbalta designed, formulated, manufactured, and/or supplied by it was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

48.     Had Lilly provided an adequate warning regarding the frequency and severity of the withdrawal and dependency risks, Plaintiff's injuries would have been avoided.

49.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

50.     WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

### SECOND CAUSE OF ACTION
### STRICT PRODUCT LIABILITY – DESIGN DEFECT

51.     Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

52.     At all times relevant, Lilly was engaged in the business of selling Cymbalta in the State of Indiana.

13

53. The Cymbalta manufactured, marketed, promoted and sold by Lilly was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

54. Lilly introduced a product into the stream of commerce that is dangerous and unsafe in that the harm of Cymbalta outweighs and benefit derived therefrom. The unreasonably dangerous nature of Cymbalta caused serious harm to Plaintiff.

55. Lilly manufactured, marketed, promoted and sold a product that was merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

56. Lilly placed Cymbalta into the stream of commerce with wanton and reckless disregard for public safety.

57. Despite evidence that Cymbalta is dangerous and likely to place users at serious risk to their health, Lilly failed to disclose and warn of the health hazards and risks associated with Cymbalta and, in fact, acted to deceived the medical community and public at large, including all potential users of Cymbalta, by promoting it as safe and effective.

58. Lilly knew or should have known that physicians and other healthcare providers began commonly prescribing Cymbalta as a safe and effective product despite its lack of efficacy and potential for serious side effects.

59. There are other antidepressant medications and similar drugs on the market with safer alternative designs, in that they provide equal or greater efficacy and far less risk.

60. As a direct and proximate result of Lilly's widespread promotional activity, physicians commonly prescribe Cymbalta and safe and effective.

61. As a direct and proximate result of one or more of these wrongful acts and

14

omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

62.	WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCT LIABILITY – FAILURE TO WARN**

63.	Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

64.	Lilly researched, tested, developed, designed, licensed, manufactured, packaged, inspected, labeled, distributed, sold, marketed, promoted and/or introduced Cymbalta into the stream of commerce and in the course of same, directly advertised and/or marketed Cymbalta to consumers or persons responsible for consumers, and therefore, had a duty to warn Plaintiff and Plaintiff's physicians of the risks associated with Cymbalta, which Lilly knew or should have known are inherent in the use of Cymbalta.

65.	Lilly had a duty to warn of adverse drug reactions, which it knew or should have known, can be caused by the use of Cymbalta and/or are associated with the use of Cymbalta, including its propensity to induce withdrawal symptoms and side effects.

66.	Cymbalta was under the exclusive control of Lilly and was not accompanied by

15

appropriate warnings regarding all possible adverse side effects and complications associated with the use and discontinuation of Cymbalta. The information given to consumers and physicians did not accurately reflect the risk, incidence, symptoms, scope or severity of such side effects to the consumer as compared to other similar products available in the market, which possessed lower risk of such side effects. The promotional activities of Lilly further diluted and/or minimized any warnings that were provided with the product.

67.     Lilly downplayed the serious and dangerous side effects of Cymbalta in order to foster and heighten sales of the product.

68.     Cymbalta was defective and unreasonably dangerous when it left the possession of Lilly in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it, including but not limited to severe, debilitating withdrawal symptoms. Even though Lilly knew or should have known the risks associated with Cymbalta, it failed to provide adequate warnings

69.     Plaintiff used Cymbalta as intended or in a reasonably foreseeable manner.

70.     Plaintiff could not have discovered any defect in the drug through the exercise of reasonable care.

71.     Lilly, as manufacturer of Cymbalta and other pharmaceutical prescription drugs, is held to the level of knowledge of an expert in the field, and further, Lilly had knowledge of the dangerous risks and side effects of Cymbalta.

72.     Plaintiff did not have the same knowledge as Lilly and no adequate warning was communicated to Plaintiff's physicians.

73.     Lilly had a continuing duty to warn consumers, including Plaintiff and Plaintiff's physicians, and the medical community of the dangers associated with Cymbalta

16

and by negligently and wantonly failing to adequately warn of the dangers associated with the use of Cymbalta, Lilly breached its duty.

74.    Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market and sell the drug without providing adequate warnings or instructions concerning the use of the drug in order to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harms posed by the drug.

75.    In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including Plaintiff.

76.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

77.    WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**FOURTH CAUSE OF ACTION**
**STRICT PRODUCT LIABILITY**

Case MDL No. 2576 Document 20-1 Filed 09/09/14 Page 18 of 31

78. Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

79. Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

80. Lilly designed, manufactured, marketed, promoted, sold, supplied, and/or distributed Cymbalta, which was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Lilly.

81. Plaintiff used Cymbalta as prescribed and in a manner normally intended, recommended, promoted, and marketed by Lilly.

82. Cymbalta failed to perform safely when used by ordinary consumers, including Plaintiff, when used as intended and in a reasonably foreseeable manner.

83. Cymbalta was defective in its design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design and formulation.

84. Cymbalta was defective in design or formulation in that it posed a greater likelihood of injury compared to other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

85. Cymbalta was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with, nor was otherwise accompanied by, warnings adequate to alert consumers, including Plaintiff and Plaintiff's physicians, of the risks described herein, including the significant increased risk of withdrawal symptoms.

86. Although Lilly knew or should have known of the defective nature of Cymbalta, it continued to design, manufacture, market, and sell Cymbalta in order to maximize sales and

profits at the expense of the public health and safety.  By so acting, Lilly acted with a conscious and deliberate disregard of the foreseeable harm caused by Cymbalta.

87.     Plaintiff could not, through the exercise of reasonable care, have discovered Cymbalta's defects or perceived the dangers posed by the drug.

88.     Lilly's conduct as described herein was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Lilly and deter it from similar conduct in the future.

89.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

90.     WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

91.     Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

92.     Lilly owed a duty to Plaintiff and Plaintiff's physicians to convey and

communicate truthful and accurate information about Cymbalta.

93.     Lilly represented to Plaintiff, Plaintiff's physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal side effects were no different, and no worse and no more frequent, than other similar products in the market.  These representations were, in fact, false.

94.     Lilly also represented to Plaintiff, Plaintiff's physicians, and other members of the public and the medical community that Cymbalta can treat physical pain associated with depression.  These representations were, in fact, false.

95.     Lilly was negligent in failing to exercise due care in making the aforesaid representations.

96.     Lilly had a pecuniary interest in making said representations, which were made in order to expand sales and increase revenue Cymbalta.

97.     At the time said representations were made by Lilly, at the time Plaintiff and Plaintiff's physicians took the actions herein alleged, Plaintiff and Plaintiff's physicians were ignorant of the falsity of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said representations, Plaintiff and Plaintiff's physicians were induced to, and did, use Cymbalta and attempt to discontinue from Cymbalta.  If Plaintiff and Plaintiff's physicians had known the actual facts, Plaintiff's injuries would have been avoided because Plaintiff's physician would not have prescribed the drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

98.     The reliance of Plaintiff and Plaintiff's physicians upon Lilly's representations was justified because the representations were made by individuals and entities that appeared

20

to be in a position to know the true facts relating to risks associated with Cymbalta.

99.     As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered pecuniary losses including but not limited to past and future medical and related expenses.

100.     WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SIXTH CAUSE OF ACTION
### FRAUD

101.     Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

102.     Lilly represented to Plaintiff, Plaintiff's physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal side effects were no different, and no worse and no more frequent, than other similar products in the market.  These representations were, in fact, false and material.

103.     Lilly also represented to Plaintiff, Plaintiff's physicians, and other members of the public and the medical community that Cymbalta can treat physical pain associated with depression.  These representations were, in fact, false and material.

104.     Lilly made the aforesaid representations knowingly and/or with reckless disregard for their truth or falsity.

105.     Lilly made the aforesaid representations with the intent that Plaintiff and Plaintiff's physicians act upon said representations.

106.     At the time said representations were made by Lilly, at the time Plaintiff and Plaintiff's physicians took the actions herein alleged, Plaintiff and Plaintiff's physicians were

21

ignorant of the falsity of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said representations, Plaintiff and Plaintiff's physicians were induced to, and did, use Cymbalta and attempt to discontinue from Cymbalta.  If Plaintiff and Plaintiff's physicians had known the actual facts, Plaintiff's injuries would have avoided because either Plaintiff's physician would not have prescribed the drug, Plaintiff would not have taken the drug, and/or the risk would have been conveyed to Plaintiff in a way so as to alter the prescription and avoid Plaintiff's injuries.

107.    The reliance of Plaintiff and Plaintiff's physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

108.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering.  Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses.  Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

109.    WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

110.    Plaintiff incorporates by reference, as if fully set forth herein, all other

22

paragraphs of this Complaint.

111. As described herein, Plaintiff suffered injuries as a direct and proximate result of hers use and discontinuation of Cymbalta.

112. At the time of Plaintiff's use of Cymbalta and resulting injuries, the Cymbalta she was taking was in essentially the same condition as when it left the control and possession of Lilly.

113. At all times relevant, the Cymbalta received and used by Plaintiff was not fit for the ordinary purposes for which it is intended to be used in that, inter alia, it posed a higher risk of withdrawal symptoms – of greater duration and severity – than other similar products available in the market.

114. Plaintiff's injuries were due to the fact that Cymbalta was in a defective condition, as described herein, rendering it unreasonably dangerous to him.

115. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiff suffered severe injuries as set forth herein. Plaintiff has incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiff has required and will continue to require healthcare and services and has incurred, and will continue to incur medical and related expenses. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

116. WHEREFORE, Plaintiff demands judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF INDIANA'S DECEPTIVE CONSUMER SALES ACT,
### *IC §§ 24-5-0.5-0.1- 0.5-3 et seq.*

117.    Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

118.    Indiana's Deceptive Consumer Sales Act creates a cause of action for those harmed by unfair competition, which includes any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

119.    Defendant has made numerous misrepresentations to Plaintiffs, their healthcare providers, and the general public.

120.    Defendant has made numerous misleading omissions, including their failure to disclose risk information as described herein, thereby giving rise to unnecessary pain and suffering.

121.    Defendant's business practices relating to their products are unlawful because they constitute, *inter alia*, false advertising, intentional misrepresentation and fraudulent concealment.

122.    As a direct and proximate result of Defendant's unlawful business practices and false advertising, Plaintiffs have suffered significant damages, including but not limited to physical injury and actual loss of money or property, and will continue to suffer such damages in the future.

123.    WHEREFORE**,** Plaintiffs seek damages, restitution, disgorgement, injunctive relief, attorneys' fees and costs, and all other relief allowed under Indiana's Deceptive Consumer Sales Act, *IC §§ 24-5-0.5-0.1- 0.5-3 et seq.*

## NINTH CAUSE OF ACTION
## VIOLATION OF MISSOURI'S DECEPTIVE CONSUMER SALES ACT,
## Sec. 407.010 et seq.

124.    Plaintiff incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

125. Missouri's Deceptive Trade Practices Act creates a cause of action for those harmed by false advertising in connection with a consumer transaction.

126. Defendant has made numerous misrepresentations to Plaintiffs, their healthcare providers, and the general public.

127. Defendant has made numerous misleading omissions, including their failure to disclose risk information as described herein, thereby giving rise to unnecessary pain and suffering.

128. Defendant's business practices relating to their products are unlawful because they constitute, *inter alia*, false advertising, intentional misrepresentation and fraudulent concealment.

129. As a direct and proximate result of Defendant's unlawful business practices and false advertising, Plaintiffs have suffered significant damages, including but not limited to physical injury and actual loss of money or property, and will continue to suffer such damages in the future.

130. WHEREFORE, Plaintiffs seek damages, restitution, disgorgement, injunctive relief, statutory penalties, all actual, compensatory and multiplication of damages, attorneys' fees and costs, and all other relief allowed under Missouri's Deceptive Trade Practices Act, *IC § 407.010 et seq.*

## CAUSE OF ACTION FOR LOSS OF CONSORTIUM

131. Plaintiff, NEIL SCHERER incorporates by reference, as if fully set forth herein, all other paragraphs of this Complaint.

132. Plaintiff, NEIL SCHERER, Plaintiff ELAINE SCHERER's spouse, as a result of the severe injuries suffered by ELAINE SCHERER, has suffered a loss of consortium including a loss of love, solace, comfort, companionship, society, and/or marital/sexual relations and will continue to suffer such damages in to the future.

133. WHEREFORE, Plaintiff, NEIL SCHERER, seeks actual, compensatory and/or

exemplary damages, and all other relief, allowed by law.

## PRAYER FOR DAMAGES

WHEREFORE, as so far as the law and this Court allows, Plaintiffs demand judgment against the Defendants as follows:

### AS TO THE FIRST CAUSE OF ACTION FOR NEGLIGENCE:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.

### AS TO THE SECOND CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY – DESIGN DEFECT:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

26

Case MDL No. 2576   Document 20-1   Filed 09/09/14   Page 27 of 31

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.

### AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY – FAILURE TO WARN:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.      Punitive and exemplary damages;

7.      Costs of suit incurred herein; and

8.      For such other and further relief as the court may deem just and proper.

### AS TO THE FOURTH CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

27

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.      Punitive and exemplary damages;

7.      Costs of suit incurred herein; and

8.      For such other and further relief as the court may deem just and proper.

## AS TO THE FIFTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.      Punitive and exemplary damages;

7.      Costs of suit incurred herein; and

8.      For such other and further relief as the court may deem just and proper.

## AS TO THE SIXTH CAUSE OF ACTION FOR FRAUD:

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past, present and future, according to proof at the time of trial;

28

3.    Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.    For medical monitoring according to proof;

5.    For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.    Punitive and exemplary damages;

7.    Costs of suit incurred herein; and

8.    For such other and further relief as the court may deem just and proper.

## AS TO THE SEVENTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY:

1.    General damages according to proof at the time of trial;

2.    Medical and other special damages, past, present and future, according to proof at the time of trial;

3.    Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.    For medical monitoring according to proof;

5.    For pre-judgment and post-judgment interest as followed by the laws of the state of Indiana;

6.    Costs of suit incurred herein; and

7.    For such other and further relief as the court may deem just and proper.

## AS TO THE EIGHTH CAUSE OF ACTION FOR VIOLATION OF *INDIANA'S DECEPTIVE CONSUMER SALES ACT, IC §§ 24-5-0.5-0.1- 0.5-3 et seq.*

1.    For injunctive relief, forever enjoining defendant from the acts of unfair competition and untrue and misleading business practices, and ordering defendant to pay

29

restitution to Plaintiffs all funds acquired by means of any act or practice declared by this Court to be in violation of Indiana's Deceptive Consumer Sales Act, *IC §§ 24-5-0.5-0.1- 0.5-3 et seq*., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

    2. For disgorgement of Defendant's profits;

    3. For exemplary and punitive damages in an amount to be proven at trial;

    4. For attorney fees, according to proof;

    5. For such other and further relief as the Court deems just and proper.

**AS TO THE NINTH CAUSE OF ACTION FOR VIOLATION OF MISSOURI'S DECEPTIVE CONSUMER SALES ACT, Sec. 407.010 et seq.**

Plaintiffs seek damages, restitution, disgorgement, injunctive relief, statutory penalties, all actual, compensatory and multiplication of damages, attorneys' fees and costs, and all other relief allowed under Missouri's Deceptive Trade Practices Act, *IC § 407.010 et seq.*

**AS TO THE CAUSE OF ACTION FOR LOSS OF CONSORTIUM**

Plaintiff, NEIL SCHERER, seeks actual, compensatory and/or exemplary damages, and all other relief allowed by law.

WHEREFORE, Plaintiffs pray for all relief requested.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a jury trial.

30

Respectfully submitted,

/s/ John T. Kirtley, III
JOHN T. KIRTLEY, III
Ferrer, Poirot & Wansbrough
Missouri Bar No. 60568
2603 Oak Lawn Ave., Suite 300
Dallas, Texas 75210
(214) 521-4412 phone
(214) 526-6026 facsimile
jkirtley@lawyerworks.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of August, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed the documents to any non CM/ECF participants.

/s/John T. Kirtley, III
John T. Kirtley, III